Please be seated, thank you. Will the clerk please call the first case of the morning? Before you begin, counsel, I would like to make an announcement. As some of you have argued here before our court before, there are five judges and the most of four here this morning. The fifth judge was not able to be in attendance at this oral argument. However, he will have full benefit of both your written briefs, your record, and importantly today, your oral arguments because they are recorded and as you know they are available online. So he will be a fully participating member in your case and will be here in terms of the deciding of your case. Just for the record, I wanted to make that announcement. You may proceed. In the interest of the court, I am going to defer on behalf of the plaintiff to Richard Glass. First, I would like to address the standard of review. On page 212, the record confirms respondent's response to petitioner's statement of exceptions filed at the commission on July 20, 2015, quote, respondent adopts the statement of facts as stated in petitioner's statement of exceptions. As such, there are no questions of facts before this case, before this court, and it should be reviewed to no avail. I don't know that we can just let that representation go unchallenged. Wasn't the stipulation basically that they stipulated to that's what his testimony was rather than there are no issues in this case? I mean, obviously, why are we here if there's no issues in the case? So under the statement of facts, the exact wording that appeared was that they are adopting the statement of facts. Did you adopt the argument that your client wasn't credible? Did you adopt that? I did not adopt that. Well, isn't that a factual question we have to decide? I believe that is a factual question. You want to decide that de novo? How would we do that? Okay. They also adopt the fact that respondent, within the statement of facts, it says respondent presented no evidence to reflect Richard's testimony. Okay, that's true. We may accept that as true, but that doesn't mean our review is de novo. I mean, if different inferences can be drawn from these facts and we've got a credibility to decide, I think you're just wrong, ma'am. I wouldn't spend a lot of time. I've seen a review with manifest weight in this case. Go ahead. Given the manifest weight, I still believe that we have met our burden of proving those issues. Well, let's hone in on what Justice Hoffman said, Dr. Blayford, but the commission had problems with your client's credibility, didn't it? They had problems with one statement of time. Every piece of evidence in this case is consistent with the exception of the time of the accident. My client stated he was injured within a four-hour period. They presented an unsigned, undated accident report that reports to show an exact time given by my client as to his time of accident. The respondent presented about 20 minutes of video, not five hours. Well, who's the mower? He is the supervisor who apparently prepared the report. My client agrees that he did give a report to them. The next day, he corroborated the report's description of the accident in all the material respects except the time, correct? And they were troubled by that because the claimant had a clear recollection in detail of everything that happened that day except the time because the video showed obviously nothing apparently happened during the time that he originally reported it. And then he says, oh, by the way, well, it must have happened later than that. And my response to that is that my client never was able to predict this report until the day of trial. He didn't prepare this report. He didn't write the time in there. Mr. Omoa did, not my client. That's not what my client indicated. She told that person. So, again, it comes down to my client was credible for 99% of his testimony, and suddenly, one piece, the time is wrong. Again, there is a signature. There is a place for a signature on page 137. There's no signature. This isn't a signed document. It's inherently unreliable. Did you object to the submission of that document? I did not because it is inherently unreliable. And I believe that my client testified probably to that which the commission agreed with. I'm a little bit confused. I don't want to go too far into that. But you have the other side submitting a document that you believe is completely unreliable and you don't object because the prior effect should take judicial notice that it's totally unreliable? On what theory would you not object? I would not object because this document, to me, does not have grounded statements. If you want to present something that's ungrounded, then I allow it to go in. Before you move on, the problem, though, again, is as the commission honed in, your client cooperated every detail of Omoa's unsigned report, correct? Correct. Except for the time. Correct. Well, go ahead. So my argument is the opposite of that. How can he be completely credible minus 1% of that? Well, wait a minute. The thing they found him not credible on is critical. It's absolutely critical. The time this video was taken, if during that period of time is when he alleged the accident occurred, and in that particular case the video shows no accident. So whether the period of time shown in the video is accurate or not accurate is absolutely critical to this case. And your client remembers everything except the time. Correct. And he also stated that he pivoted, he felt a pain, he did not fall to the floor. They didn't believe that there was an accident at all. They thought he was lying. I mean, that's why this came out the way it did. Counsel, I'm really confused by the timing. What's in Omoa's report in the mitigating times, Omoa put 1.45 in the report, and then the segment of surveillance video is shown not demonstrating any injuries on the part of your client. Omoa's report says 1.45, the surveillance video. As I understand it starts at 1.46 and goes to 2.09. Right. I think you argue that it didn't encompass the time frame in Omoa's report. That's not what Omoa's report says. It was reported on July 19th at 14.52. It says that the accident occurred at approximately 13.52 in the bottom paragraph. Okay. Somewhere in the briefs it says 13.45. Right, so they submitted a 20-minute period of video. No, Omoa says that claimant suggested it occurred at approximately 13.45. 13.45 is in the second paragraph. So the surveillance informed me that at 13.52 he was observed favoring his life, which I don't think it shows that. 13.45 is correct. It's when he states that the accident was reported to him at that point. Why wasn't he arguing that the surveillance video doesn't encompass the time that he claims the accident happened instead of, you know, according to this whole thing about I remember everything else except the time. Right. And that is essentially my argument is that he says it happened during that date, and I believe that all of the evidence proves that he had an accident that date. And I think the commission is trying to force the petitioner to prove the time of the accident. Well, sometimes common sense has to prevail. I have to confess with this and I just realized this. The claimant also did not in cross-examination admit telling Omoa that he did not report to Omoa the incident at the time. Okay. The claimant denied telling Omoa that the accident, he reports it the next day to Omoa. Correct. We all agree on that. Correct. The claimant denied telling Omoa that the accident had occurred at 145 p.m. Okay. So now we have to believe that obviously Omoa took it upon himself to just make up, pick a time out of thin air. Where would the 145, in your humble opinion, come from that Omoa put in the report? He made it up, right? I don't know that this is a report that Omoa wrote. This is a typewritten report and it's unsigned. It's not handwritten. Well, you've already weighed it. It's in evidence. So you can say whatever you want about the credibility. It's in evidence. The commission relied upon it. Correct. So you can stand there for 50 minutes contesting its reliability, but I have a feeling you're stuck with it. Okay. And my client, I think, is also credible. And the other thing is that he does give a consistent history. The accident happens on the 18th. He gives a consistent accident on the 19th. And at the 20th at the company clinic, he gives a consistent history. All of his histories are consistent. In addition to that, the IED doctor says there's causal connection, but he says I didn't see it on the video. All right. So your position is simple. You're saying that, okay, he's credible in all of these details, consistent reporting. There's an issue over the time, but that doesn't take away from the manifest way or the other. Is that your position? That is my position. Got it. Thank you. Very good. Thank you. Do you have time in response? Yes. Counsel, you may respond. Good morning, Your Honors. May it please the Court, Your Honors Counsel. My name is Lisa Barbieri. I represent the appellate jurist casino in this matter. Basically, our position is this case boils down to the credibility of Petitioner. Not only did Arbitrator Granada not find an accident based on Petitioner's testimony, he did not believe Petitioner when he testified. He could not remember the time of the accident. The arbitrator looked at the fact that the Petitioner reported his injury the very next day after the alleged accident took place to his supervisor. An incident report was drafted with the details of the accident, including the time at which the accident took place. He testified of all material aspects of the incident report. Again, counsel keeps arguing that the report is unreliable, but the Petitioner testified to that report almost word for word with the exception of the time. Counsel, why was it that the employer submitted a video that didn't encompass the time that was demonstrated in Amola's report? Amola says 1.45. The claim indicated that the accident occurred at 1.45, and the video starts at 1.46. It just, why? I had that time wrong because I thought it was taken 20 minutes prior and encompassed that time. I'm just going by what the briefs and what counsel just indicated. It was from the start. He says the accident happened at 1.5, and then you've got surveillance video starting at 1.46. This seems very odd. Well, in the surveillance video, even if they have that wrong time, if it's one minute off, he's not moving. He didn't have an accident. Nothing is wrong. Nothing is on that video. Well, doesn't it become a red herring? As I understand counsel's argument in the record, when he was confronted by the discrepancy, didn't the claimant himself say, well, it must have happened later in the shift? So he puts it after the video anyway. It was after the video anyway. He didn't say it. That's his argument. It's credibility determination based on that, that alone. But Arbiter Granada looked at all of the evidence. He looked at the testimony, he looked at the incident report, and he looked at the surveillance. That's how he came to his credibility determination. It wasn't just based on that video. It wasn't just based on the incident report. It was a totality of the evidence. He testified. The arbitrator also found Petitioner was at no greater risk than the general public when he pivoted his spine. Well, that's another theory. That's another theory? Yeah. I'm not sure if that's a good theory. Okay. Well, it could be. I'm going to not touch that theory. Counsel cites to Adcock, decided by this court, the facts in Adcock are distinguishable from the case at hand. In Adcock, Petitioner was under 9 feet 6 and had a production quota. Counsel in her brief analogizes Petitioner's work as a security guard where he is tasked with allowing patrons to and from the gaming floor. With the Petitioner, Adcock welded locks from a chair with a production quota in time constraints. But just to get down to it, we're going off into that area, but. Which I'm not going to do. Yes. But your position is, is that credibility was not established on behalf of the claimant. Correct. Because of this inconsistency. Because of the. Okay. Yes, because of the incident report, because of the testimony, and because of the surveillance. Thank you. Thank you, Counsel. Counsel, you may reply. Again, I will present to this court that by the manifest way of the evidence, we have been able to prove that everything was consistent with the exception of this. Thank you. Thank you. Very good. Thank you, Counsel Bowles, for your arguments in this matter of Petitioner's advisement. This position is now issued.